UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-80809-CIV-COHN/SELTZER

AR2, LLC, a Florida limited liability company
d/b/a LIV INSTITUTE,

       Plaintiff,

vs.

ANDREW RUDNICK, an individual,

       Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss, Alternatively Motion for Summary Judgment [DE 20] ("Motion"). The Court has carefully considered the Motion, Plaintiff's Response [DE 47] ("Response"), Defendant's Reply [DE 50], the record in the case, and is otherwise advised in the premises.

I. BACKGROUND

On June 18, 2014, Plaintiff AR2, LLC d/b/a Liv Institute ("Plaintiff" or "Liv Institute") filed suit against Defendant Andrew Rudnick ("Defendant") alleging claims for violations of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA") and the Florida Uniform Trade Secrets Act, Fla. Stat. § 688, breach of contract, and breach of fiduciary duty. In the Complaint, Plaintiff alleges that Andrew M. Ress, M.D., a plastic surgeon located in Boca Raton, hired Defendant in August 2013, to enhance Ress' brand and name recognition. Compl. [DE 1] at 2 ¶¶ 1-2.[1] The Liv

---

[1] Plaintiff restarts his general allegations at paragraph 1 rather than continuing the numbering from the beginning of the Complaint. Thus, the Complaint

Institute brand was created to market Ress' plastic surgery practice.  Id. at 2 ¶ 3.  In January 2014, Defendant was named Liv Institute's chief executive officer and co-manager for which he was to receive a salary of $120,000.  Id. at 2-3 ¶ 4.  Ress remained Liv Institute's Chief Medical Officer and co-manager.  Id. at 3 ¶ 5.  Additionally, Ress' approval was required for all "major decisions."  Id.  In connection with its business, Liv Institute utilized the service marks Liv, Liv Institute, and 844LivSexy (collectively the "Liv marks").  Id. ¶ 7.  Part of Defendant's job responsibilities included creating and registering domain names using variations of the Liv marks.  Id. ¶ 9.  Liv Institute also submitted an application to the U.S. Patent and Trademark Office to register the Liv Institute mark.  Id. ¶ 11.  Rather than register the domains for these marks in the name of the Plaintiff, however, Defendant registered the domains in his own name.  Id. ¶¶ 12-13.  When Ress discovered that the Liv domains were registered in Defendant's name, he demanded that they be immediately transferred to Liv Institute.  Id. ¶ 14.  Defendant refused.  Id. ¶ 15.

Ress also discovered that while Defendant was serving as CEO, he engaged in misconduct, including misappropriation of Liv Institute's funds, transfer of funds from Liv Institute to his own business, failing to withhold taxes from his paycheck, and theft of Liv Institute's intellectual property and trade secrets.  Id. at 3 ¶ 6.  As a result of this misconduct, Defendant was fired as CEO for cause.  Id. ¶ 17.  Defendant has refused all demands to turn over the Liv domains.  Id. ¶¶ 18-21.  Defendant has also interfered with Plaintiff's business by shutting down Liv Institute's website and commandeering

---

contains two paragraphs one through six.

Plaintiff's social media platforms including its Facebook, Google plus, and Twitter accounts. Id. ¶¶ 21-22.  Plaintiff also contends that Defendant caused defamatory reviews to be placed on yelp.com and has redirected Plaintiff's business to a pornographic website.  Id. ¶¶ 23, 25.  Finally, Plaintiff alleges that Defendant has retained and failed to destroy or return Plaintiff's confidential information and trade secrets such as its client/patient information and vendor list and has been soliciting its employees, consultants, and vendors in violation of the non-solicitation provision of the operating agreement.  Id. ¶¶ 28, 30.  Plaintiff brings claims for violation of the ACPA (Counts 1-3), breach of the non-solicitation provision of the Operating Agreement (Count 4), breach of the Operating Agreement's confidentiality-trade secret provisions (Count 5), violation of Florida's Uniform Trade Secrets Act, Fla. Stat. § 688 (Count 6), and breach of fiduciary duty (Count 7).

Defendant has moved to dismiss the complaint on the grounds that Plaintiff was not even entitled to file this lawsuit because, under the terms of the Operating Agreement, Rudnick and the Rudnick Trust did not vote in favor of initiating this lawsuit.[2]  Plaintiff opposes the Motion.

## II. DISCUSSION

In the Motion, Defendant argues that Plaintiff lacked authority to initiate this lawsuit because pursuant to Florida statute,[3] the members of a limited liability company

---

[2] Alternatively, Defendant seeks summary judgment on the same grounds.

[3] The statute in question, Fla. Stat. § 605.04073, provides that in a member-managed limited liability company, "the affirmative vote or consent of a majority-in-interest of the members is required to undertake an act outside the ordinary course of the company's activities and affairs."  Fla. Stat. § 605.04073(1)(d).

must vote and a majority vote is required before a lawsuit can be filed.  Motion at 2.  In this case, both the Ress and Rudnick trusts hold a 50% membership interest in Plaintiff. Id.  Because the Rudnick Trust never voted in favor of or consented to the filing of this lawsuit, Defendant contends that the lawsuit is an *ultra vires* act and this case must be dismissed.  Id. at 3.

Defendant's argument that the filing of this lawsuit was *ultra vires* is premised on his belief that a limited liability company's operating agreement cannot supersede Florida's limited liability company statute.  Defendant's interpretation of Florida law is misguided at best, disingenuous at worst.  Under Florida law, "[t]he governance and operation of an LLC in the absence of other written terms is a simple matter of majority rule." Kertesz v. Spa Floral, LLC, 994 So. 2d 473, 475 (Fla. Dist. Ct. App. 2008).  The limited liability statute, only provides default rules which the parties may alter via agreement.  See id. at 475 n.1 ("Neither the complaint nor the amended complaint referred to-much less attached a copy of-any articles of organization or operating agreement relating to the LLC, or any contract between the LLC and Kertesz. As a result, the analysis of Kertesz's claims is governed by section 608.4231(3), Florida Statutes (2007), and applicable decisional law."); Louis T. M. Conti & Gregory M. Marks, Florida's New Revised LLC Act, Part II,  87 Fla. B.J. 47, 47 (2013) ("[T]he features of the revised act discussed below are 'default' provisions, all of which can be overridden or supplemented by the terms of the operating agreement of the LLC, with the exception of the nonwaivable items described in F.S. §605.0105.").

Fla. Stat. § 605.0105 provides that an operating agreement may govern: "(a) [r]elations among the members as members and between the members and the limited

liability company; (b) [t]he rights and duties under this chapter of a person in the capacity of manager; (c) [t]he activities and affairs of the company and the conduct of those activities and affairs." Fla. Stat. § 605.0105(1). How decisions are made in manager-managed limited liability companies is not listed among the non-waivable provisions. Fla. Stat. § 605.0105(3)-(4). Thus, Defendant's argument that the statute governs fails.

Defendant also contends that the Operating Agreement itself bars initiation of the lawsuit because Ress does not have the right to take unilateral action on behalf of the Plaintiff for "major decisions" such as filing lawsuits. Motion at 4. Here, the Operating Agreement does provide that the ability to bring suit is a major decision that must not be made "unless and until such . . . have been discussed between the Managers, and same has been approved by Ress." Operating Agreement [DE 1-6] ¶ 5.01. In other words, while major decisions must be discussed between the managers, only Ress' approval is necessary to authorize them.[4] The Complaint alleges that "[a]ll conditions precedent to the initiation of this action have been met, waived, or otherwise satisfied." Compl. ¶ 31. Moreover, prior to filing suit, Plaintiff served a demand letter on Defendant through counsel. See DE 1-4. This letter advised that if Defendant did not comply with the demand by June 14, 2014, Plaintiff might seek legal, equitable, or administrative relief against him. Id. Thus, the allegations of the Complaint and

---

[4] There is simply no support for Defendant's position that Ress merely has a veto over major decisions. See Motion at 5. To the contrary, the Operating Agreement is clear that only Ress' approval is necessary for major decisions. Operating Agreement ¶ 5.01. Because this section of the Operating Agreement is not ambiguous, the Court does not reach Defendant's third argument that the Operating Agreement must be interpreted in his favor if ambiguous. See Motion at 5.

5

exhibits thereto, viewed in the light most favorable to the Plaintiff, fail to establish that the filing of the instant lawsuit was an *ultra vires* act.[5]  Accordingly, the Motion must be denied.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss, Alternatively Motion for Summary Judgment [DE 20] is **DENIED**. Defendant shall file its answer to the Complaint on or before **August 28, 2014.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on this 14th day of August, 2014.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.

---

[5] Plaintiff has submitted an affidavit from Ress with its Response which details the discussion Ress had with the Defendant prior to initiating this lawsuit.  See Affidavit of Andrew M. Ress, M.D. In Support of Plaintiff's Response in Opposition to Defendant, Andrew Rudnick's Motion to Dismiss, Alternatively Motion for Summary Judgment  [DE 47-2] ¶¶ 11-12.  Because the Court declines to treat the Motion as a motion for summary judgment, the Court has not considered this affidavit because it is outside the four corners of the Complaint.  In any event, consideration of the affidavit is unnecessary because the factual allegations of the Complaint and exhibits thereto support that the provisions of the Operating Agreement were followed.